**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:20-cr-0045** |
| | ) | |
| **RAMONA RIVERA LUNA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

APPEARANCES:

**Gretchen C.F. Shappert, United States Attorney**
**Meredith Jean Edwards, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
        *For the United States of America,*

**Clive Claudius Rivers**
Law Offices of Clive Rivers
St. Thomas, U.S.V.I.
        *For Ramona Rivera Luna.*

## MEMORANDUM OPINION

**MOLLOY, C.J.**

**BEFORE THE COURT** is Ramona Rivera Luna's motion for revocation of the magistrate judge's detention order in this matter. (ECF No. 11.) For the reasons outlined below, the Court will deny Rivera Luna's motion.

## I. BACKGROUND

The relevant facts in this case that pertain to the motion before the Court were adduced during the course of a November 4, 2020 detention hearing before the magistrate judge. At that hearing the magistrate judge heard testimony from two witnesses, Homeland Security Investigations ("HSI") Special Agent Andrew Hayden ("Agent Hayden") and Sal Lorenzo Rivera ("Lorenzo Rivera").[1]

_____

[1] During his testimony, Agent Hayden adopted as part of his testimony the facts contained in the affidavit in support of a criminal complaint, ECF No. 1-1, and the United States' motion for detention, ECF No. 6, after

Agent Hayden testified that, on October 30, 2020, federal agents executed a search warrant at the property located at 124 Contant Estate, St. Thomas, U.S. Virgin Islands. *See* Aff. in Supp. of Criminal Compl. at 2, ECF No. 1-1. The property has three buildings which each contain a number of bedrooms. *Id.* at 2-3. One of the buildings also contains a bar and kitchen. *Id.* at 2. Upon initiating the search, agents entered the bar where they requested that the occupants call the manager. *Id.* at 3. About fifteen minutes later, a woman later identified as Ramona Rivera Luna ("Rivera Luna") arrived. *Id.* Rivera Luna explained that she had keys to all the rooms which she owned, but in which other women resided. *Id.* at 3-4. When Rivera Luna unlocked one of the bedroom doors, Agent Hayden observed a woman in a state of near complete undress jump on the bed and put herself on all fours. *Id.* at 4. Simultaneously, Rivera Luna responded, "No! Police!" *Id.* During the course of the search, agents discovered ten individuals who were not present in the United States lawfully, including eight women from the Dominican Republic and Venezuela who resided in various rooms throughout the property and are alleged to be sex trafficking victims in this case. *Id.* at 5. Agents also recovered a large amount of condoms and some lubricant from the rooms occupied by those women. *Id.* In a room in which Rivera Luna claimed to live, agents discovered the wiring for a surveillance system as well as the DVR unit for that system. *Id.* at 3. Rivera Luna stated that she rents the property and has been the owner and operator of the business there for the past fifteen years. *Id.* at 5-6. Thereafter, agents arrested Rivera Luna.

Agent Hayden also testified as to certain information obtained from interviews on October 31, 2020, and November 1, 2020, with the alleged victims in this case. *See* Detention Hr'g Tr. at 10:20-24, ECF No. 31. All eight women were interviewed individually. *Id.* at 5:11-13. Each woman did not know whether the other women had been interviewed or what information the other women had provided. *Id.* at 5:11-16. According to Agent Hayden, each of the alleged victims reported that she understood that she would come to St. Thomas to work for Rivera Luna as a bartender or server. *Id.* at 6:25-7:05, 7:16-23. When the women arrived however, each woman was required to perform commercial sex work to pay off her

---

confirming that the facts stated within those documents were an accurate reflection of the facts known to him. *See* Detention Hr'g Tr. at 4:17-5:2, 9:7-18, ECF No. 31. As such, the Court will include the facts from those documents as part of Agent Hayden's testimony.

*United States v. Rivera Luna*
Case No. 3:20-cr-0045
Memorandum Opinion
Page 3 of 10

debt for being smuggled into the U.S. Virgin Islands. *Id.* at 7:05-10. The women identified, through a lineup, Rivera Luna as the owner of the establishment for whom they were required to perform the commercial sex work until their debts were paid off. *Id.* at 7:08-23. The women also gave detailed accounts of the debt they owed Rivera Luna—ranging from $8,000 to $15,000—and the money they were required to pay Rivera Luna for rent, leaving the property, and using the rooms behind the bar that were used for the commercial sex work. *Id.* at 7:24-8:12. The women also expressed extreme emotion and fear that Rivera Luna may retaliate against them or their families if Rivera Luna learned that the women provided information to authorities. *Id.* at 9:19-25, 10:04-09. Several women reported that Rivera Luna had previously warned them that Rivera Luna knew where their families lived. *See* Mot. for Detention at 3, ECF No. 6. Further, the women expressed concern that Rivera Luna had connections with powerful individuals both locally and in the Dominican Republic. *See* Detention Hr'g Tr. at 10:01-03. One of the women reported that Rivera Luna had threatened that she could easily pay $2,000 to $3,000 to have the woman killed and that no one would ever find out. *See* Mot. for Detention at 3, ECF No. 6.

Finally, Agent Hayden testified that Rivera Luna has no criminal history, has resided at her current residence for at least 15 years, and is a naturalized U.S. citizen. *See* Detention Hr'g Tr. at 14:17-15:05, ECF No. 31.

Lorenzo Rivera testified that he is Rivera Luna's son and resides with her. *Id.* at 21:24-25, 22:05-06. Lorenzo Rivera further testified that Rivera Luna has resided in St. Thomas for over 30 years. *Id.* at 23:10-11. Rivera Luna has one other son who lives in Atlanta, Georgia. *Id.* at 23:02-07.

After hearing the testimony and argument of the parties, the magistrate judge concluded that the Government had proven (1) by a preponderance of the evidence that no condition or combination of conditions could be imposed on Rivera Luna that would reasonably assure her presence in court and (2) by clear and convincing evidence that no condition or combination of conditions could be imposed on Rivera Luna that would reasonably assure the safety of any other person and the community. Given these conclusions, the magistrate judge ordered Rivera Luna detained.

On November 13, 2020, Rivera Luna filed a document captioned "NOTICE OF APPEAL FROM MAGISTRATE JUDGE DECISION" which the Court construes as a motion for review of a detention order pursuant to 18 U.S.C. § 3145(b). (ECF No. 11.) In her motion, Rivera Luna argues that the magistrate judge abused her discretion when she concluded that the Government had proven that there are no conditions or combination of conditions of release that will reasonable assure Rivera Luna's appearance as required and the safety of any other person and the community. *Id.* at 1. Rivera Luna also argues that the magistrate judge erred by relying on the hearsay testimony provided by Agent Hayden regarding the interviews with the alleged victims in this matter. *Id.* at 1-2 Finally, Rivera Luna argues that the magistrate judge did not sufficiently account for Rivera Luna's lengthy continuous residence in St. Thomas and absence of a criminal record when determining whether any combination of conditions would ensure Rivera Luna's appearance as required. *Id.* at 2.

On November 23, 2020, the United States filed an opposition to Rivera Luna's motion. (ECF No. 12.)

On December 4, 2020, a federal grand jury returned a twenty two count indictment against Rivera Luna charging her with six counts of transportation for prostitution in violation of 18 U.S.C. §§ 2421 and 2, seven counts of bringing illegal aliens to the United States for financial gain in violation of 8 U.S.C. §§ 1324(a)(2)(B)(ii) and (a)(1)(A)(v)(II), and nine counts of alien harboring for financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i). (ECF No. 13.)

Thereafter, on December 23, 2020, Rivera Luna filed a motion for release from custody. (ECF No. 16.) The United States filed an opposition to that motion on December 28, 2020. (ECF No. 21.) On December 30, 2020, the magistrate judge denied Rivera Luna's motion for release from custody because Rivera Luna did not proffer any new information that was not already considered by the magistrate judge at the November 4, 2020 hearing. *See* Order at 2, December 30, 2020, ECF No. 22.

On January 15, 2021, the Court held a status conference in this matter. At that status conference, the Court granted the parties an opportunity to supplement their filings with

respect to the motion for review of the November 4, 2020 detention order in light of the indictment and the magistrate judge's December 30, 2020 order.

On January 22, 2021, Rivera Luna filed a supplement to her motion for review of the November 4, 2020 detention order pursuant to 18 U.S.C. § 3145(b). (ECF No. 30.) In her supplement, Rivera Luna argues that if the Court imposed a condition requiring Rivera Luna to surrender her passport, that condition, in conjunction with travel restrictions due to COVID-19, would reasonably assure Rivera Luna's appearance as required. *Id.* at 3. Thereafter, on January 29, 2021, the United States filed a supplement to its opposition. (ECF No. 35.)

## II. LEGAL STANDARD

Section 3145, Title 18, of the U.S. Code ("Section 3145") provides that, "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b); *see also United States v. Vega,* 438 F.3d 801, 804 (7th Cir. 2006) ("Under 18 U.S.C. § 3145, the government or a charged party who moves for review of a release or detention order must do so in the court where charges are pending, regardless of where the initial appearance and detention hearing took place."). A district court reviews a magistrate judge's order of detention *de novo*. *See United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985). A district court may rely on the evidence presented before the magistrate judge. *See United States v. Koenig*, 91 F.2d 1190, 1193 (9th Cir. 1990) (explaining that, when hearing motions pursuant to 18 U.S.C. § 3145, "the district court is not required to start over in every case").

Pretrial detention of a criminal defendant will be ordered only if, after a hearing upon a motion by the government, a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see also United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) ("The Bail Reform Act of 1984 authorizes judicial officers to grant persons charged with federal offenses release on bail unless it is determined that 'such release will not reasonably assure the appearance of the person as required or will

endanger the safety of any other person or the community.'") (quoting 18 U.S.C. § 3142(b)). The government carries the burden to establish either (A) that no condition or combination of conditions will reasonably assure the appearance of the person as required by a preponderance of the evidence, *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986); or (B) that no condition or combination of conditions will reasonably assure the safety of any other person and the community by clear and convincing evidence, *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985).

 In determining whether any conditions of release can reasonably assure the defendant's appearance in court and the safety of the community, a court must consider the following four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1491, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of  sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986) ("The statute requires that in determining whether there are conditions of release that will reasonably assure such appearance and safety, the judicial officer shall take into account the available information concerning (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the

person; and (4) the nature and seriousness of the danger to any person and the community that would be posed by the person's release.").

## III. DISCUSSION

Rivera Luna argues that the Government has not met its burden to demonstrate that there is no condition or combination of conditions of release that will reasonably assure her appearance as required and the safety of any other person and the community. In weighing all four factors under 18 U.S.C. § 3142(g) *de novo*, the Court finds that the Government has established by a preponderance of the evidence[2] that no condition or combination of conditions will reasonably assure Rivera Luna's appearance as required. The Court also finds that the Government has established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

### A. Nature and Circumstances of the Offenses Charged

The first factor the Court must consider is the nature and circumstances of the offenses charged against Rivera Luna.

Here, Rivera Luna is charged with six counts of transportation for prostitution in violation of 18 U.S.C. §§ 2421 and 2, seven counts of bringing illegal aliens to the United States for financial gain in violation of 8 U.S.C. §§ 1324(a)(2)(B)(ii) and (a)(1)(A)(v)(II), and nine counts of alien harboring for financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

The evidence presented at the November 4, 2020 detention hearing reveals that these offenses allegedly involved inducing women to enter the U.S. Virgin Islands illegally—through a smuggling network connected to Rivera Luna—under the pretense that they

---

[2] The Court bases its findings, in part, on the hearsay testimony of Agent Hayden regarding the interviews given by the alleged victims in this matter. Significantly, the Bail Reform Act explicitly permits use of evidence that would not be admissible in a criminal trial. 18 U.S.C.A. § 3142(f); *see also Delker*, 757 F.2d at 1397 (holding that hearsay was admissible in a pretrial detention hearing); *United States v. Acevedo-Ramos*, 755 F.2d 203, 204, 206 (1st Cir. 1985) ("The lawfulness of . . . . using hearsay evidence at bail hearings is well established. Nothing in the new Act forbids the use of hearsay, where reliable."). The Court specifically finds the hearsay testimony from the interviews to be reliable due to the fact that each of the seven women gave consistent accounts, replete with detail, despite being unaware of which of the other six women were interviewed or what information the other six women revealed in their interviews. As such, the Court rejects any objection Rivera Luna may have to the Court's reliance on this testimony on the basis that it is hearsay.

would work as bartenders. Once the women arrived, however, they were allegedly forced to engage in commercial sex acts to pay off substantial smuggling debts controlled by Rivera Luna. Individual interviews with seven women—and surveillance equipment found upon a search of the property where the women were kept—revealed that the women's movements were severely restricted and monitored. Further, each woman expressed extreme fear that Rivera Luna, through her connections, could harm the women or their families here in St. Thomas or in the Dominican Republic.

These circumstances and the seriousness of the charges against Rivera Luna weigh heavily toward her continued detention. Significantly, by the explicit terms of the Bail Reform Act, a violation of the Mann Act, 18 U.S.C. § 2421, is considered a crime of violence. *See* 18 U.S.C. § 3156(a)(4)(C) ("the term 'crime of violence' means . . . any felony under chapter . . . 117 [18 U.S.C. § 2421 et seq.]"). In conjunction with the evidence of Rivera Luna's threats toward the alleged victims and their families, the Court finds that the nature and circumstances of the offenses charged weigh heavily toward the conclusion that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

Further, each count with which Rivera Luna is charged—of which there are 22— carries a possible term of ten years' imprisonment. Such exposure provides a strong incentive to flee. Nevertheless, Rivera Luna argues that the Court could impose a condition requiring Rivera Luna to surrender her passport, and that such condition, in conjunction with travel restrictions due to COVID-19, would reasonably assure Rivera Luna's appearance as required. The Court is not convinced. The evidence shows that Rivera Luna has connections to a smuggling network that smuggled the numerous alleged victims in this matter into the U.S. Virgin Islands both before and during the current COVID-19 pandemic. Thus, the Court finds that the nature and circumstances of the offenses charged weigh heavily toward the conclusion that no condition or combination of conditions will reasonably assure Rivera Luna's appearance as required.

## B. Weight of the Evidence Against Defendant

Second, the Court considers the weight of the evidence against Rivera Luna. *See* 18 U.S.C. § 3142(g)(2). Several courts have recognized that "the weight of the evidence is the least important of the various factors." *See United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (internal quotation marks omitted); *see also United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) ("Courts generally consider the Weight Factor as the least important of the Factors." (internal quotation marks omitted)). Though the weight of evidence is a relevant factor, the function of 18 U.S.C. § 3142 is not to make a preliminary determination of innocence or guilt. *See* 18 U.S.C. § 3142(g); *see also United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) ("[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment."). Rather, this factor "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Motamedi*, 767 F.2d at 1408.

Here, the weight of the evidence against Rivera Luna includes the information given by seven alleged victims in this matter. The women identified Rivera Luna in a lineup as the individual who had induced them to enter the United States illegally and subsequently forced them to engage in commercial sex acts to pay off substantial smuggling debts. This is strong evidence and provides a substantial incentive to flee. *Cf. United States v. Sabhnani*, 493 F.3d 63, 76 n.17 (2d Cir. 2007) ("[I]n light of direct evidence from the victims of the charged forced labor and corroborative evidence of the violence used against them, we must conclude . . . that this § 3142(g)(2) factor weighs against defendants in assessing their risk of flight."). As such, the Court finds that the weight of the evidence weighs toward the conclusion that no condition or combination of conditions will reasonably assure Rivera Luna's appearance as required.

Furthermore, the substantial evidence of guilt provided by the alleged victims gives Rivera Luna a greater incentive to harm or intimidate the alleged victims or their families. Given the evidence that Rivera Luna has previously threatened the alleged victims and their families, the Court finds that the weight of the evidence weighs toward the conclusion that

no condition or combination of conditions will reasonably assure the safety of any other person and the community.

**C. History and Characteristics of Defendant**

Rivera Luna's history and characteristics indicate that she has no criminal history, has lived in St. Thomas for more than 30 years, and is a naturalized U.S. citizen. Additionally, Rivera Luna has two adult children—one son who lives with her here in St. Thomas and another son who lives in Atlanta, Georgia. The Court finds that these ties to the community weigh toward her release.

**D. Nature and Seriousness of Danger Posed by Defendant's Release**

The fourth and final factor demands that the Court consider the "nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). Here, for all the reasons set forth above, the Court finds that Rivera Luna would pose a danger to the community and to potential witnesses in the instant case if released.

### IV. CONCLUSION

Weighing all four factors under 18 U.S.C. § 3142(g) to assess Rivera Luna's risk of flight and dangerousness to the community, the Court finds that the circumstances and severity of the charged offenses, the evidence of Rivera Luna's ties to smuggling operations, and the evidence of Rivera Luna's threats toward the alleged victims in this matter substantially outweigh Rivera Luna's ties to the community and her lack of criminal history. As such, the Court concludes that the Government has established by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Rivera Luna's appearance as required. The Court also finds that the Government has established by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. An appropriate order follows.

**Dated:** May 26, 2021                    /s/ *Robert A. Molloy*
                                    **ROBERT A. MOLLOY**
                                    **Chief Judge**